UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Rosemary A. Gilroy

    v.                                                        Civil No. 07-cv-300-JL

James Kasper, et al.[1]

### REPORT AND RECOMMENDATION

Before the Court is the complaint (document no. 1) of Rosemary Gilroy, proceeding pro se and in forma pauperis. Gilroy is seeking relief under the diversity jurisdiction of this Court, alleging that the defendants, a Massachusetts mortgage company and broker and their attorneys, violated New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. ("RSA") 358-A (2006) ("CPA") by engaging in unfair, deceptive, and predatory lending practices, as well as fraud. Gilroy further alleges that the defendants committed additional violations of state tort law. Because Gilroy is proceeding pro se and in forma pauperis, the

---

[1] Gilroy names Kasper and the Ponemah Trust as defendants to this action. I find, however, that a fair reading of Gilroy's complaint indicates that she also intended to sue the named defendants' attorneys, Alan Segal and Kurt McHugh. Accordingly, I find that all four of these individuals are to be considered properly named defendants to this action for all purposes.

matter is before me for preliminary review to determine, among other things, whether or not she has stated any claim upon which relief might be granted. See United States District Court of the District of New Hampshire Local Rule ("LR") 4.3(d)(1)(B).

For the reasons discussed herein, I find that Gilroy has stated claims upon which relief might be granted for violations of the CPA, fraud, and intentional infliction of emotional distress, and I direct, in an Order issued simultaneously with this Report and Recommendation (hereinafter, the "Simultaneous Order"), that those claims be served on defendants. I also recommend that the harassment and discrimination claims be dismissed for failure to state a claim.

## Standard of Review

Under this Court's local rules, when a plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review. LR 4.3(d)(1)(B). In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings

liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  See Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).  All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true.  See id. This review ensures that pro se pleadings are given fair and meaningful consideration.

## Background

In 1999, Rosemary Gilroy moved from Newton, Massachusetts, where she had lived for thirty-five years, to Amherst, New Hampshire.  Presumably using the proceeds from the sale of her home in Newton, Gilroy rented an apartment and, on March 1, 2000, purchased five office condominium units ("Units 1-5") in Amherst. Gilroy received permission from the local zoning board to turn Unit 1 into a residential unit for herself, where she has lived since May 1, 2000.  Gilroy intended to rent or sell Units 2-5 and

to use that income to support herself and to pay her mortgage on the property.[2]  Gilroy, a woman now in her sixties, had no experience in financing and developing real estate before purchasing the property in Amherst.

Gilroy was unable to rent or sell any of the office condominiums and, in 2002, decided to convert them into residential condominium units.  The Amherst Zoning Board granted Gilroy a variance for this plan in March 2003, and, in March 2004, also granted final approval for her site plan for the conversion.  Gilroy's initial mortgage was with Ameriquest Mortgage Company, and in July 2004, and again in March 2005, she refinanced with that company.  Those loans were secured by Units 1, 2 and 4, but left Units 3 and 5 unencumbered.

At some point, Gilroy determined that she needed additional money to finish the conversion of the condominiums.  Gilroy sought to finish the conversion by obtaining a loan secured by

---

[2]Gilroy's first and second mortgages, used to purchase the property and then to improve it, were held by Ameriquest Mortgage Company.  The Ameriquest Mortgage Company mortgages are not at issue in this action but are the subject of another pending lawsuit before this Court.  See Gilroy v. Ameriquest Mortgage Co., Civ. No. 07-cv-074-JD.  In addition, Gilroy filed a third action in this Court that concerns the facts, circumstances, and parties at issue in this matter, In Re: Rosemary Ann Gilroy, Debtor, Civ. No. 07-cv-297-SM (filed Sept. 20, 2007 and closed Nov. 16, 2007).

one of the unencumbered condominiums, as, Gilroy asserts, she had enough equity in each of these two units alone to secure the loan she required.  Defendants gave Gilroy $150,000 in financing, but insisted on placing liens on both Unit 3 and Unit 5.

Within four months of receiving the loan from defendants, Gilroy was out of cash and in need of more funding to complete the conversions and to obtain occupancy certificates that she needed to rent or sell the condominiums.  In addition, the three mortgages held by Ameriquest on Units 1, 2 and 4 were going into arrears, and she needed cash to bring those loans current. Defendants refused to advance additional money to Gilroy, despite the fact that she claims to have had more than adequate equity in the secured property to cover the loans.

Gilroy states that between December of 2006 and April of 2007, defendants' attorneys led her to believe that the defendants would provide her with additional funding so that she could obtain occupancy certificates for the property.  The defendants' attorney, however, dragged out the process of actually approving and distributing the additional funds by requiring plaintiff to provide defendants with copies of a number of documents, some of which had to be specially prepared to

comply with the request, all the while communicating that once the documents were provided, the loan would be approved. The loan, however, was ultimately refused as "not in [defendants'] best interest."

Gilroy alleges that the defendants deceived and defrauded her by delaying the processing of the loan to assure that Gilroy would not be in a position to obtain funding from any other source, allowing defendants to foreclose on Units 3 and 5. Gilroy further asserts that defendants engaged in predatory lending practices by: (1) intentionally exploiting her lack of prior experience in obtaining financing and developing real estate; (2) by lending her money on repayment terms they knew she would be unable to meet; (3) by setting her up for failure by denying her the means to complete the conversion; and (4) by encumbering all of her available property so that plaintiff could not obtain funding from any other source. Gilroy claims this exploitation was motivated, at least in part, by the defendants' intent to discriminate against her based on the fact that she was a single woman in her sixties. Gilroy alleges that, using these unfair methods, defendants availed themselves of Gilroy's cash investment in the property, the additional equity the property

had acquired since her purchase, and her sweat equity, all without recompense.

## Discussion

### I. Jurisdiction

Gilroy brings this action, arising out of state tort law, under the diversity jurisdiction of this Court.  <u>See</u> 28 U.S.C. § 1332 (establishing the jurisdiction of the federal district courts over actions based on state law where the parties are of diverse citizenship and the amount in controversy exceeds $75,000).  Gilroy alleges that all of the defendants are citizens of Massachusetts, while she is a citizen of New Hampshire, and the amount alleged to be in controversy far exceeds $75,000.  Accordingly, Gilroy has properly invoked this Court's subject matter jurisdiction.

### II. State Law Claims

#### A. The Fraud Claim (Count I)

In order to prove a fraud claim, a plaintiff must demonstrate: (1) that defendants intentionally made material false statements, (2) which the defendants knew to be false, (3) with the intention to induce the plaintiff to rely on the false statements, and (4) that the plaintiff reasonably relied on the

statements to her detriment.  See Snow v. Am. Morgan Horse Ass'n, 141 N.H. 467, 468, 686 A.2d 1168, 1170 (1996).  "'The essence of fraud is a fraudulent misrepresentation.  [In order to sustain a fraud claim] plaintiff must specify the essential details of the fraud, and specifically allege the facts of the defendant's fraudulent actions.  It is not sufficient for the plaintiff merely to allege fraud in general terms.'"  Brzica v. Trs. of Dartmouth Coll., 147 N.H. 443, 449, 791 A.2d 990, 995 (2002) (quoting Jay Edwards, Inc. v. Baker, 130 N.H. 41, 46-47, 534 A.2d 706 (1987)).  Here, plaintiff has set forth specific facts which she claims demonstrate that the defendants acted deceptively.  Further, she has alleged that, in reliance on the deceptive representations of defendants, she was unable to obtain financing from any other source, and that she was in many ways worse off for her reasonable reliance on defendants' assertions and promises.  While her statements, at this point in the litigation, are somewhat conclusory, she does make specific allegations regarding defendants' conduct that are sufficient to allow me to find, for purposes of preliminary review, that the defendants engaged in fraudulent misrepresentation when they intentionally led her to believe that they would lend her money, when they had

no intention of doing so.  I will therefore direct that this claim be served on defendants in my Simultaneous Order.

  B. <u>The Discrimination Claim (Count II)</u>

  Plaintiff broadly asserts that the defendants would not have engaged in the tortious behavior alleged if she were a man, married, an experienced developer, or if she were younger.  Plaintiff has not offered any facts at all to support this conclusion.  Gilroy's claim amounts to nothing more than pure speculation as to what might have motivated defendants in this matter.  I find, therefore, that Gilroy has failed to allege sufficient facts to state a discrimination claim, and I recommend that the claim be dismissed.

  C. <u>The Intentional Infliction of Emotional Distress Claim (Count IV)</u>[3]

  Plaintiff alleges that defendants intentionally inflicted emotional distress on her by subjecting her to the deceptive and fraudulent practices described above.  "'[O]ne who by extreme and

---

[3] In her complaint, Gilroy alleges a claim of "Violation of Personal Injury Law, Causing Financial Losses to Plaintiff" as Count III.  This claim simply spells out damages to which she believes she will be entitled if she prevails in this action. Because she does not allege any additional legal theory supporting her request in this section of her complaint, I will not consider it to be a separate cause of action for purposes of preliminary review.

outrageous conduct intentionally causes severe emotional distress to another is subject to liability for that emotional distress.'" Amatucci v. Hamilton, Civ. No. 05-cv-259-SM, 2007 WL 1825177 at *6 (D.N.H. June 25, 2007) (quoting Konefal v. Hollis/Brookline Coop. Sch. Dist., 143 N.H. 256, 260, 723 A.2d 30, 33 (1998)).  A plaintiff must "point to conduct on the part of the defendant that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (internal citations omitted).  Plaintiff claims that the stress she has endured as a result of defendants' conduct has caused her to suffer both physical and emotional harm.

While plaintiff will have to prove that the conduct of the defendants was truly outrageous and egregious, and that it actually caused the harm of which she complains, in order to prevail at trial, I find that, construing the allegations liberally, Gilroy has alleged the minimum facts necessary to state a claim that the defendants engaged in intentional deceptive, fraudulent, and predatory acts that caused her extreme distress.  Accordingly, I will direct that this claim be served on defendants in my Simultaneous Order.

     D.    <u>The Harassment Claim (Count V)</u>

Gilroy claims that defendants engaged in harassing conduct when, during the first several months of 2007, they required her to spend a great deal of time obtaining copies of contractor contracts and a detailed letter from the Town of Amherst before she could get financing from defendants which, she believed, they had promised to provide upon receipt of those documents. Instead, Gilroy claims, she was ultimately denied financing, despite her compliance with the defendants' burdensome requests. Gilroy claims the burden imposed by the requests was designed to harass her.

Construed liberally, I find that Gilroy's harassment claim restates her claim that the defendants used unfair and deceptive business practices in their dealings with her. Gilroy has failed to state any theory of harassment which would give rise to an additional separate cause of action arising out of these allegations. Accordingly, I recommend that the harassment claim, as alleged, be dismissed as entirely subsumed by other claims raised in the action.

E.   The Consumer Protection Act Claim (Count VI)

Plaintiff alleges that defendants violated her rights under the CPA by engaging in unfair and deceptive trade practices. "RSA 358-A:2 declares it 'unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce in this state.'" Hughes v. DiSalvo, 143 N.H. 576, 577, 729 A.2d 422, 424 (1999). The CPA defines trade and commerce as follows:

> "Trade" and "commerce" shall include the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting people of this state.

Id. "A practice is unfair if (1) it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness, (2) it is immoral, unethical, oppressive, or unscrupulous, or (3) it causes substantial injury to consumers." Chroniak v. Golden Inv. Corp., 983 F.2d 1140, 1146 (1st Cir. 1993) (citations omitted).

Here, plaintiff alleges that the defendants engaged in "trade" and "commerce," and violated the CPA by engaging in fraudulent and deceptive lending practices when they: (1) provided her with a mortgage on her properties knowing that she

12

did not have the means to make the required payments; (2) refused to extend her additional funds knowing that would prevent her from being able to repay the loans by sale of her condominiums; (3) and conducted the transaction in an intentionally deceptive manner to prevent her from seeking alternative financing.  For purposes of preliminary review, I find that, as alleged, plaintiff has stated sufficient facts to state a CPA claim against the defendants upon which relief might be granted, and I will direct service of this claim in my Simultaneous Order.

## Conclusion

For the foregoing reasons, I recommend the discrimination and harassment claims be dismissed from this action.  Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law

Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992);

United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:      February 4, 2008

cc:        Rosemary A. Gilroy, pro se

14